# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 00-21155
_____

MAURICE TAYLOR,

Plaintiff-Appellant,

VERSUS

GARY L. JOHNSON,
Director, Texas Department of Criminal Justice, Institutional Division;
JERRY GROOM, Chaplain Director;
AKBAR SHABAZZ, Islamic Chaplain;
DONALD KASPAR, Regional Chaplain,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

July 24, 2001

Before SMITH, DUHÉ, and WIENER,
Circuit Judges.

PER CURIAM:

Maurice Taylor filed a civil rights complaint under 42 U.S.C. § 1983 alleging that a Texas Department of Criminal Justice policy violates his free exercise rights under the First Amendment. The policy forbids inmates to wear beards, and Taylor alleges that his Muslim beliefs require him to wear a one-quarter-inch beard and that the policy violates his equal protection rights because the grooming policy allows beards for medical reasons but forbids them for religious purposes.

The district court dismissed Taylor's complaint as frivolous under 28 U.S.C. § 1915(e)-(2)(B).[1] Taylor appealed, then filed a motion for reconsideration, claiming for the first time that the grooming policy violates the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc. The district court denied this motion. We affirm the dismissal, as frivolous, of the free exercise claim, dismiss for want of jurisdiction the appeal from the denial of the motion for reconsideration, and vacate the dismissal of the equal protection claim and remand it for further consideration.

I.

A complaint is frivolous if it lacks an arguable basis in law or fact, and a complaint lacks such a basis if it relies on an indisputably meritless legal theory. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). We review for abuse of discretion a dismissal of a prisoner's complaint as frivolous. *Id.*

II.

Taylor's free exercise claim is foreclosed by *Green v. Polunsky,* 229 F.3d 486 (5th Cir. 2000), in which an inmate challenged the same grooming policy at issue here. He, like Taylor, contended that the policy violated his free exercise rights because prison officials would not let him wear a one-quarter-inch beard in accordance with the tenets of his Muslim faith, yet allowed prisoners with certain medical conditions to wear three-quarter-inch beards. *Id.* at 488. We disagreed and concluded that the policy was reasonably related to legitimate

---

[1] Although the court's opinion leaves doubt whether the court dismissed the claim as frivolous or for failure to state a claim, the final judgment states that "this civil action is DISMISSED, with prejudice, as frivolous under 28 U.S.C. § 1915(e)-(2)(B)."

penological interests. *Id.* at 490. Because this decision is binding precedent, *United States v. Short,* 181 F.3d 620, 624 (5th Cir. 1999), *cert. denied,* 528 U.S. 1091 (2000), the district court did not abuse its discretion in deciding that the free exercise claim lacks an arguable basis in law.

III.

Taylor contends that the grooming policy violates the Equal Protection clause of the Fourteenth Amendment. He claims that because the prison policy threatens his fundamental First Amendment rights, strict scrutiny applies.

To maintain his equal protection claim independently of his free exercise claim, Taylor must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent. *See, e.g., City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439-40 (1985). "Discriminatory purpose . . . implies that the decision-maker singled out a particular group for disparate treatment and selected his course of action at least in part for *the purpose* of causing its adverse effect on an identifiable group." *Lavernia v. Lynaugh,* 845 F.2d 493, 496 (5th Cir. 1988) (internal quotation marks omitted).

Taylor alleges that he is situated similarly to inmates who cannot shave for medical reasons and claims that accommodating these inmates privileges Eighth Amendment rights over his First Amendment rights. Acknowledging the legitimate penological interest in prohibiting beards of indeterminate length, Taylor contends that the failure to grant him the same accommodation as those with medical conditions fails strict scrutiny and lacks a rational relationship to a legitimate governmental inter-

2

est. He also alleges that the prison officials refused his request for exemption at least in part because of the adverse effect it has on the exercise of his faith.

Strict scrutiny is appropriate only where a government classification implicates a suspect class or a fundamental right. *Rublee v. Fleming,* 160 F.3d 213, 217 (5th Cir. 1998) (internal citations omitted).[2] Taylor claims that growing a beard in accordance with the tenets of Islam is a fundamental right. We have held that "[r]ights are fundamental if their source, explicitly or implicitly, is the Constitution." *Ball v. Rapides Parish Police Jury,* 746 F.2d 1049, 1059 n.38 (5th Cir. 1984).

Even assuming, *arguendo*, that the right to grow a beard is a fundamental free exercise right, we temper our application of strict scrutiny in the prison context.[3] Although convicted prisoners do not forfeit all constitutional protections, we must balance those protections against the fact that lawful incarceration necessarily requires the limitation of many rights and privileges and against the legitimate penological objectives of the prison. *See O'Lone v.*

*Shabazz,* 482 U.S. 342, 348-49 (1987).[4]

"To ensure that courts afford appropriate deference to prison officials, . . . prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone,* 482 U.S. at 349. Applying an "inflexible strict scrutiny analysis would seriously hamper [the prison administrators'] ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Turner v. Safley,* 482 U.S. 78, 89 (1987). Thus, a prison regulation "is valid if it is reasonably related to legitimate penological interests," and prison officials need not "set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id.* at 89, 90-91.

In *Green,* 229 F.3d at 489-91, we examined the same policy in light of the disparate treatment of medical and religious exemptions and found that the policy served a legitimate penological interest. Additionally, Taylor has not alleged any facts that demonstrate that the prison administrators purposefully intended to discriminate against him as a member of an identifiable group.

*Green,* however, specifically left open the question whether the regulation unconstitu-

---

[2] An individual religion might constitute a suspect class. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (*dictum*). We do not reach this question, however, because Taylor has framed his argument solely in terms of fundamental rights.

[3] *See Thornburgh v. Abbott,* 490 U.S. 401 (1989) (finding that even where strict scrutiny otherwise would apply to the policy in question, the exigencies of prison administration require only that the regulations be reasonably related to a legitimate penological interest).

[4] *See also Morrison v. Garraghty,* 239 F.3d 648, 654-55 (4th Cir. 2001) (using the "legitimate penological interest" standard to evaluate a prisoner's equal protection claim based on racial discrimination). "This more deferential standard applies even where the alleged infringed constitutional right would otherwise warrant higher scrutiny." *Id.* at 655.

tionally treated similarly situated prisoners differently. *Id.* at 489 n.6. Moreover, "[d]iscriminatory enforcement of facially neutral grooming regulations may, under some circumstances, violate the Equal Protection Clause." *Shiloh-Bryant v. Garner,* No. 93-8159 (5th Cir. June 28, 1993) (unpublished) (citing *Scott v. Miss. Dep't of Corrections*, 961 F.2d 77, 82 n.21 (5th Cir. 1992)). Because Taylor's claims lack neither an arguable basis in law or fact, he might have stated a nonfrivolous claim had the district court allowed him the opportunity to develop the factual basis of his claim through a *Spears* hearing[5] or questionnaire. *See Eason v. Thaler,* 14 F.3d 8 (5th Cir. 1994). Consequently, the district court abused its discretion in dismissing this claim as frivolous, so we vacate the dismissal of the equal protection claim and remand for further factual development.

## IV.

Taylor contends that the grooming policy violates the Religious Land Use and Institutionalized Persons Act. Because he raised this issue in the district court in a motion for reconsideration filed more than ten days after the judgment of dismissal and after he had filed his notice of appeal, the motion arises under FED. R. CIV. P. 60(b). *See Harcon Barge Co. v. D & G Boat Rentals, Inc.,* 784 F.2d 665, 667 (5th Cir. 1986) (en banc). The court denied the motion on the ground that Taylor's one-sentence allegation failed to meet the requirements for relief under rule 60(b). Taylor did not file a new notice of appeal or seek to amend his previous notice of appeal after the court denied the motion.

We consider *sua sponte* the basis of our jur-

---

[5] *Spears v. McCotter,* 766 F.2d 179, 181 (5th Cir. 1985).

isdiction to review this motion. *See Williams v. Chater,* 87 F.3d 702, 704 (5th Cir. 1996). A party may file a rule 60(b) motion at any time within one year after judgment, even if an appeal is pending, and the denial of that motion is appealable separately from the underlying judgment. *Id.* at 704-05.

In general, we require a separate notice of appeal to preserve the issue for our review. *McKethan v. Tex. Farm Bureau,* 996 F.2d 734, 744 (5th Cir. 1993). We construe this requirement liberally, however, and a brief may serve as the "functional equivalent" of an appeal if it is filed within the time specified by FED. R. APP. P. 4 and gives the notice required by FED. R. APP. P. 3. *Smith v. Berry,* 502 U.S. 244, 247-49 (1992).

Even under this liberal construction, Taylor's brief does not constitute a timely notice of appeal. The rule 60(b) motion was denied on January 3, 2001. Under rule 4(a)(1)(A), the notice of appeal must be filed within thirty days. Taylor's appellate brief is dated February 3 and was filed on February 7. We consider a prisoner's *pro se* notice of appeal as timely filed "if it is deposited in the institution's internal mail system on or before the last day for filing." FED. R. APP. P. 4(c)(1). Taylor, however, missed the February 2 deadline by either reckoning. Therefore, we have no jurisdiction to consider whether the district court properly denied his rule 60(b) motion.

The dismissal, as frivolous, of Taylor's free exercise claim is AFFIRMED, the appeal from the denial of the motion for reconsideration is DISMISSED for want of jurisdiction, and the dismissal of the equal protection claim is VACATED and REMANDED for further fact-finding and other proceedings consistent with this opinion. We express no view on how

the district court should resolve this claim on remand.