# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 10, 2025

Lyle W. Cayce
Clerk

No. 23-40640

———————

Martha Chavez, *as next friend for* J.C.,

*Plaintiff—Appellant*,

*versus*

Brownsville Independent School District,

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:18-CV-173

———————————————————

Before Ho, Duncan, and Oldham, *Circuit Judges*.

Per Curiam:[†]

Martha Chavez appeals the summary judgment dismissing her § 1983, ADA, and Rehabilitation Act claims on behalf of her disabled son, J.C. Finding no error, we affirm.

## I.

In 2018, Chavez sued the Brownsville Independent School District (BISD) and former BISD employee Victor Villareal in state court on behalf

---

[†] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.4.

of her son, J.C., for injuries he received while under Villareal's supervision in 2016. J.C., who suffers from cerebral paralysis, had been enrolled as a special education student in BISD since he was three years old.

Villareal was assigned as J.C.'s one-on-one aide during the 2015–16 school year, when J.C. was in high school. Villareal was certified as a Level I aide under Texas law. *See* Tex. Admin. Code § 230.61(1). Level I aides may "perform[] routine tasks under the direction and supervision of a certified teacher or teaching team." *Ibid.* They have less independence and require more direct supervision than Level III aides, who have greater experience or have earned additional college credits. *See id.* § 230.59(2). The record shows that, from 2014 to 2017, most BISD aides (anywhere from 83–91%) held a Level I certification.

In February 2016, Villareal called Chavez to inform her that, while under his care, J.C. had fallen on his face in the bathroom and fractured a tooth. Chavez met with Miguel Cordova, the assistant principal for special education, who assured her that the fall was an accident and that the school had had no complaints about Villareal. Villareal continued to serve as J.C.'s aide into the 2016–17 school year.

In November 2016, Villareal again called Chavez to ask whether she had noticed anything wrong with J.C.'s right arm. Chavez said she hadn't. Villareal took J.C. to the school nurse, who summoned Chavez to the school. Chavez found J.C. in "a lot of pain" and took him to a doctor. X-rays revealed J.C.'s arm was badly broken.

In the ensuing investigation, Villareal initially denied knowing how the break occurred. But he changed his story a week later, claiming he slipped while accompanying J.C. to the bathroom and accidentally "pulled [J.C.] down with him." The school recommended terminating Villareal for misleading the investigation, but he resigned before being fired.

No. 23-40640

In February 2017, Chavez sought a hearing before a Texas Education Administration officer pursuant to the Individuals with Disabilities Education Act (IDEA), claiming BISD had failed to provide J.C. a free and appropriate education. *See* 20 U.S.C. § 1415(a); Tex. Admin. Code § 89.1151. The parties settled Chavez's IDEA claims in June 2017.

Chavez then sued Villareal and BISD in state court under 42 U.S.C. § 1983, the ADA, and § 504 of the Rehabilitation Act.[1] The case was removed to federal court, and, in 2022, the district court granted BISD summary judgment on the grounds that Chavez had failed to exhaust her administrative remedies under the IDEA. Chavez appealed and, while her appeal was pending, the Supreme Court ruled that IDEA exhaustion was not required "where a plaintiff brings a suit under another federal law for compensatory damages." *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 147–48 (2023). Our court remanded for the district court to consider Chavez's damages claims. *See Chavez v. Brownsville Indep. Sch. Dist.*, No. 22-40085, 2023 WL 3918987 (5th Cir. June 9, 2023).

On remand, the district court again granted BISD summary judgment, dismissing all of Chavez's claims on the merits. Chavez appealed the summary judgment, which we review *de novo. See All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 504 (5th Cir. 2018) (citation omitted).

## II.

### A.

First, we consider Chavez's § 1983 claim that BISD's policy of assigning Level I aides to special education students violated J.C.'s right to

---

[1] After Villareal failed to appear to defend himself, Chavez filed a stipulation to dismiss all her causes of action against him without prejudice.

bodily integrity under the Fourteenth Amendment. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450–51 (5th Cir. 1994) (describing "right to be free of state-occasioned damage to a person's bodily integrity" (quotation omitted)).

Because BISD is a municipality, Chavez must show "(1) that a constitutional violation occurred and (2) that an official policy attributable to the school district's policymakers (3) was the moving force behind it." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 623 (5th Cir. 2018) (cleaned up); *see generally Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The district court ruled Chavez failed to show BISD's policy was the "moving force" behind J.C.'s injuries. Specifically, the court held the policy was neither "facially" unconstitutional nor adopted "with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Balle v. Nueces Cnty.*, 952 F.3d 552, 558 (5th Cir. 2017) (quotation omitted). We see no error in these rulings.

Chavez argues the district court failed to consider whether the policy was facially unconstitutional specifically in regard to J.C.'s right to bodily integrity. We disagree. The court ruled that the policy did not violate "*any* constitutional rights," including the right to bodily integrity. That ruling, moreover, was correct. To be facially unconstitutional, BISD's policy must "affirmatively allow or compel" violations of the right to bodily integrity. *Edwards v. City of Balch Springs,* 70 F.4th 302, 309–10 (5th Cir. 2023). Chavez made no showing that BISD's policy of assigning Level I aides affirmatively allowed or compelled a violation of J.C.'s bodily integrity.

As to the deliberate indifference ruling, Chavez argues the court erred by requiring proof that "BISD anticipated the exact type of harm" that caused J.C.'s injury. We disagree. To prove deliberate indifference, Chavez had to show that BISD had actual or constructive knowledge that

constitutional violations would occur similar to those that allegedly caused J.C.'s injuries. *See, e.g.*, *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008) (municipal liability requires "[k]nowledge on the part of a policy maker, either actual or constructive, that *a constitutional violation will most likely result* from a given official custom or policy" (cleaned up) (emphasis added)); *Liggins v. Duncanville*, 52 F.4th 953, 955 (5th Cir. 2022) (deliberate indifference requires showing a policy "was adopted with deliberate indifference to the known or obvious fact that a *specific constitutional violation* would follow" (quotation omitted) (emphasis added)).

Chavez failed to make this showing. At most, she pointed to testimony that a former school principal was aware of other injuries to special education students caused by employee negligence. But the same witness testified J.C.'s injuries were "very unusual." That evidence falls far short of showing that BISD had actual or constructive knowledge that a policy of assigning Level I aides to special education students would result in the kind of severe injury J.C. suffered. *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011) (deliberate indifference is a "high bar, and neither negligence nor mere unreasonableness is enough"); *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (deliberate indifference is not satisfied by evidence of "'bad' or unwise acts" but by evidence that "point[s] to the specific violation in question").

Finally, Chavez is also mistaken that the district court erred by not finding BISD had a "custom" of failing to train or properly supervise its aides. The court correctly explained that Chavez needed to point to "some evidence of multiple incidents where paraprofessionals injured students in a manner and setting similar to the incident involving J.C." Chavez points to no such evidence. *See, e.g.*, *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (holding that a "pattern of similar constitutional violations by untrained employees is ordinarily necessary" (quotation omitted)).

In sum, the district court correctly dismissed Chavez's municipal liability claims against BISD based on J.C.'s right to bodily integrity.

**B.**

Next, we consider Chavez's § 1983 claim that BISD's policy violated J.C.'s right to equal protection. We again see no error in the district court's dismissing that claim.

The court correctly explained that Chavez failed to show J.C. "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from discriminatory intent." *See, e.g.*, *Club Retro v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)). For instance, Chavez produced no evidence suggesting BISD had assigned Villareal to be J.C.'s aide "because of" rather than merely "in spite of" any adverse effects the assignment might cause. *Hawkins v. U.S. Dep't of Hous. & Urb. Dev.*, No. 20-20281, 2022 WL 1262100, at *3 (5th Cir. Apr. 28, 2022) (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

Chavez responds only by pointing to evidence which, she claims, shows BISD and its employees were negligent in assigning Level I aides. But none of this evidence suggests either differential treatment or discriminatory intent, without which Chavez's equal protection claim fails.

**C.**

Finally, we consider Chavez's claims under the ADA and the Rehabilitation Act, which require showing "intentional discrimination" against J.C. "by reason of his disability." *J.W. v. Paley*, 81 F.4th 440, 449–50 (5th Cir. 2023).

The district court correctly found Chavez produced no evidence that BISD intentionally discriminated against J.C. in connection with the events

that led to his injuries. For instance, there was no evidence that BISD intentionally discriminated against J.C. by assigning him a Level I aide, nor by retaining that aide after J.C. fell and broke his tooth. At most, these actions might be evidence of some negligence (something we need not decide), but they scarcely rise to the level of intentional discrimination. *See, e.g.*, *Cadena v. El Paso Cnty.*, 946 F.3d 717, 724 (5th Cir. 2020) (ADA intentionality requirement "require[s] something more than deliberate indifference"(quotation omitted)).

Chavez suggests any evidence that Villareal behaved unreasonably with regard to J.C. counts as evidence of intentional discrimination sufficient under the ADA and the Rehabilitation Act. No case supports that proposition, however.[2]

## III.

The district court's judgment is AFFIRMED.

---

[2] Chavez cites *Wilson v. City of Southlake*, 936 F.3d 326 (5th Cir. 2019), but that case did not even address the intentional discrimination requirement.